# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

BEAU BURCH-LUCICH,

      Plaintiff,

      v.

GARY L. LUCICH; MARCAE
LUCICH; MICHELLE LUCICH NIECE;
LUCICH FAMILY LIMITED
PARTNERSHIP, an Idaho limited
partnership; and NORTHWEST
FUNDING, LLC, formerly known as
LUCICH LLC, an Idaho limited liability
company,

      Defendant.

Case No. 1:13-cv-218-BLW

MEMORANDUM DECISION AND
ORDER

## INTRODUCTION

The Court has before it cross-motions to compel discovery responses, and

plaintiff's motion to compel compliance with the Court's Order regarding discovery of

certain material. The Court's staff attempted a mediation session that was partially

successful, and the parties then briefed their remaining disputes. The motions are now at

issue. For the reasons explained below, the Court will grant in part and deny in part each

of the cross-motions, and will grant plaintiff's motion to compel compliance with the

Court's Order.

# BACKGROUND

Plaintiff Beau Burch-Lucich alleges that his grandparents and aunt collected an inheritance from his father meant for him. He brings this action to recover damages for their fraud.

Beau was Troy Lucich's only child. Troy died in 1998 when Beau was eight years old, although Beau did not realize it because his mother was raising him without any assistance from Troy.

Beau alleges that his grandparents, defendants Gary and Marcae Lucich, knew he was Troy's son, but probated Troy's estate as though he had no children. As a result, Troy's assets were allegedly distributed to (1) Gary and Marcae; (2) Troy's sister, Michelle; (3) Michelle's children; and (4) the Lucich Family Limited Partnership. *See Complaint (Dkt. No. 1)* at ¶ 18. Beau alleges that all of Troy's assets should have gone to him because, at the time of Troy's death, Troy had no will, no spouse, and no other children.

During the summer of 2004, when Beau was fourteen years old, he wanted to meet his father. After learning that Troy had died six years earlier, he decided to visit his grandparents – Troy's parents – Gary and Marcae Lucich. Part of that visit included a paternity test, which Beau alleges established that Troy was Beau's father. During the visit, Beau's grandparents told him he was entitled to an 11% interest in the Lucich Family Limited Partnership, which was created in 1999, after Troy's death. That 11% interest was allegedly conveyed to Beau during a family meeting. *See Complaint, supra,* at ¶ 3.

Beau claims he did not learn about the probate of his father's estate until March 2013. To recover his share of Troy's estate, Beau sued (1) his grandparents, Gary and Marcae Lucich; (2) his aunt – Troy's sister – Michelle Lucich; and (3) the Lucich Family Limited Partnership ("Partnership"). Beau alleges seven claims against these defendants: (1) probate fraud under Idaho Code § 15-1-106; (2) conspiracy to commit probate fraud; (3) breach of fiduciary duty; (4) conspiracy to breach "partnership fiduciary duties"; (5) constructive trust; (6) declaratory judgment; and (7) a "partner's direct action" under Idaho Code 53-2-1001.

## ANALYSIS

### Plaintiff's Motion to Compel – Bank Records

To pursue his claims, plaintiff needs to value his interest in the Partnership and trace its assets and liabilities. To that end, he has made discovery requests of defendants seeking bank records pertaining to the Partnership. The record at least raises questions concerning whether the Partnership used four bank accounts: (1) two accounts with Idaho Independent Bank, one with an account number ending in 4054 and the other ending in 9295; and (2) an account with U.S. Bank, with an account number ending in 2585; and (3) an account referred to as the Gem account.

The defendants provided information in their possession regarding two of these accounts – those with the Idaho Independent Bank. But there are gaps in the documents provided. The gaps make it difficult for plaintiff to trace the flow of funds and assets into and out of the Partnership. This case is all about tracing – tracing those funds and assets

to determine their source and ownership. Plaintiff is entitled to discovery to close the gaps that exist in the financial information.

The defendants represent that they have no more information on these four accounts, and they offered to provide a consent so that plaintiff could obtain whatever information the banks have retained. But the consent offered by defendants was unduly narrow and required plaintiff to identify specific documents. The defendants must provide a full and unconditional consent to allow plaintiff to obtain the following: (1) All information concerning Idaho Independent Bank account number ending in 4054 from the date the account was opened through December 30, 2001; and (2) All information concerning Idaho Independent Bank account number ending in 9295 for the period between March 28, 2011 and May 25,2011, and the period between June 27, 2011, and December 26, 2011.

With regard to the other two accounts – the U.S. Bank account and the Gem account – the defendants assert that they were never used for any Partnership purpose and were at all times used as the personal account of Gary and Marcae Lucich. But deposition testimony and handwritten documents raise a question whether these two accounts were used for Partnership purposes, and that is sufficient to make them discoverable. For that reason, the Court will order that the defendants (1) turn over any information in their possession concerning the U.S. Bank account number ending in 2585 and the Gem account for the entire period the accounts were open, and (2) provide a full and unconditional consent for plaintiff to obtain from the banks information concerning

U.S. Bank account number ending in 2585 and the Gem account, for the entire period the accounts were open.

**Plaintiff's Motion to Compel – Columbia Investments**

Plaintiff is seeking all documents including tax returns and K-1's relating to Columbia Investments. That entity was originally formed in 1997 by Gary and Marcae Lucich and Buzz Woods, and its principal assets were parcels of real property. In late 1997, the partners gifted a 5% interest to Troy Lucich. When Troy passed away in 1998, Gary Lucich was appointed personal representative of Troy's estate. Gary testified in his deposition that he paid the liabilities of Troy's estate out of his own funds because the estate's assets were not sufficient to cover the liabilities. To reimburse himself for the payment of those liabilities, Gary – in his capacity as personal representative of Troy's estate – directed Buzz Woods to transfer Troy's 5% interest in Columbia Investments to himself and his wife Marcae. The Luciches then transferred the 5% interest to their daughter Michelle.

Plaintiff is seeking all Columbia Investment records, including IRS Form K-1s for each member of the Partnership. A partnership uses IRS Form K-1 to report, for each partner, his or her share of the partnership's income, deductions, credits, etc. The K-1 forms for Columbia Investments would assist plaintiff in valuing Troy's 5% share, and to test Gary Lucich's statement that Troy's 5% share was fair reimbursement for Gary's payment of the estate's debts.

There are indications in the record of an intermingling of funds between Columbia Investments and the Partnership that supports plaintiff's attempts to discover the

Columbia documents and the K-1 forms. For example, the Partnership may have been paying Columbia's debts. *See Exhibit Z (Dkt. No. 41-28)*. There are also indications in the record that between 1997 and 2005, Columbia Investments purchased and sold real property worth over two million dollars, and that Gary, Marcae, and Michelle may have contributed their gains from those sales into the Partnership.

Plaintiff is entitled to trace the flow of assets and funds, and to accomplish that tracing, he is entitled to examine the Columbia Investment documents from 1997 to 2005, including all K-1s issued by Columbia and the tax returns requested.

## Plaintiff's Motion to Compel – Attorney Fees

The Court finds that no award of attorney fees is warranted here, and will deny plaintiff's request for fees contained in their motion to compel.

## Defense Motion to Compel – Privilege Log

The Court turns next to the defendants' motion to compel. The defendants note first that plaintiff has claimed privilege for many documents but never filed a privilege log. Plaintiff recognizes his obligation to produce a privilege log under Rule 26(b)(5)(A), but argues that he is not required to prepare one until defendants initiate the conference required by Local Rule 37.1. That Local Rule applies to "discovery" motions, however, and this is a privilege issue governed by Rule 26(b)(5)(A), which requires the preparation of a privilege log. The Court will so order.

## Defense Motion to Compel – Paternity Contention

In Interrogatories 7 & 8, and Request for Production 3, defendants seek all facts, documents, and persons with knowledge, that would support plaintiff's assertion that (1)

he is the biological son of Troy Lucich, and (2) defendants had been told by Troy, prior to 2004, that Beau was his son. These are relatively narrow factual discovery requests seeking discoverable material – plaintiff's paternity is a key issue in this case. The requests are not, on their face, seeking any material protected by privilege or the work product doctrine.

Under the proportionality test in Rule 26(b)(2)(C), the benefits of this discovery would be very high while the burden of responding would be comparatively low because the amount of material at issue cannot be large. The plaintiff has provided vague responses to these questions that are insufficient. The Court will compel more detailed answers to these questions.

**Defense Motion to Compel – Estate Assets & Liabilities**

In Interrogatory 10, defendants seek information from plaintiff concerning the assets and liabilities of Troy's estate. These are fact interrogatories, rather than contention interrogatories, and do not seek on their face any material covered by privilege or the work product doctrine.

In answering this Interrogatory, the plaintiff referred the defendants to the records already produced to calculate the estate's assets and liabilities. Under Rule 33(d), where the burden of sorting through a mass of business records to answer a fact interrogatory is substantially the same for either party, the responding party may answer by identifying those records and making them available for the responding party. *Autex North America Inc.v. Mitchell Intern., Inc.,* 2014 WL 4961437 (S.D.Cal. 2014). Here the burden of finding the answer in the assembled discovery would be roughly the same for either

party. The defendant Gary Lucich was the personal representative of the estate and so was positioned to have existing knowledge about the estate's assets and liabilities. Thus, the Court finds that Rule 33(d) governs here, and the plaintiff's answer is sufficient.

**Defense Motion to Compel – Forgery Claim**

In interrogatory 11 and request for production 15, defendants seek discovery concerning the plaintiff's allegations that documents were forged by defendants or Sunny Lucich. These requests seek discoverable information, and the interrogatory questions are contention interrogatories authorized by Rule 33(a)(2), as discussed above, and their collection by plaintiff's counsel will not implicate the work protect doctrine.

Turning to the proportionality test in Rule 26(b)(2)(C), the benefit of having the forgeries identified is very high, and the burden would be minimal, as the requests do not ask for a large amount of material. Once again, plaintiff invokes Rule 33(d) by referring defendants to the documents already produced in discovery. But this time – unlike the case with the assets and liabilities of Troy's estate – the burden of finding an answer is not shared equally. The defendants cannot search those records and find forgeries – they depend on the plaintiff to identify the forgeries, and then the defendants can have their own expert test the documents. Rule 33(d) does not apply in this situation and so the plaintiff must fully answer interrogatory 11 and request for production 15.

**Defense Motion to Compel – Fraud Claim**

In interrogatory 14, the defendants seek information concerning the plaintiff's fraud claim. That interrogatory is set forth in full below:

**INTERROGATORY NO. 14:** Please state with particularity and in full substance every statement or representation you contend Gary Lucich, Marcae Lucich and/or Michelle Lucich has made knowing, when it was made that it was false, or with reckless disregard to its truth or falsity, which statement or representation is the basis of any fraud claim you are making in this case and, with respect to each statement or representation, please state:

  a) When by date or dates, or if unknown, approximate date or dates it was made;

  b) By whom;

  c) To whom;

  d) How made (oral, in writing, contained in a particularly identified document);

  e) A factual description of how you were deceived or misled by such statement/representation;

  f) When by date you first discovered the statement or representation having been made;

  g) When by date you first discovered the statement or representation was false.

  [Note: Please respond to each of the subsections of this Interrogatory separately. Please identify all persons with knowledge by name, address and telephone number with reference to each subsection. And, please identify all documents by the document control numbers in this case.]

*See Interrogatories (Dkt. No. 40-4)* at p. 24.[1]

The plaintiff has objected to this interrogatory as being overly burdensome and as intruding on protected work product. Certainly the detailed response demanded by Interrogatory 14 will require immense effort and expense.[2] *See e.g. Hanford v. City of*

---

[1] Interrogatory 18, and requests for production 8 and 9, similarly seek information on the fraud claim, and are subject to the same analysis set forth above.

[2] By demanding such detail, Interrogatory 14 signals that failure to provide even the smallest piece of evidence will result in that evidence being excluded at trial. This compels the responding party to incur great expense to sweep up every crumb of evidence. In fact, however, "[t]he general rule governing the use of answers to interrogatories is that under ordinary circumstances they do not limit proof." *Volterra Semiconductor Corp. v. Primarion, Inc.,* 796 F.Supp.2d 1025, 1074 (N.D. Cal. 2011). As with any rule,
(Continued)

*Hanford,* 2013 WL 5671460 at *8 (E.D.Cal. 2013) (stating that "[c]ontention interrogatories should not require a party to provide the equivalent of a narrative account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents"); Schwarzer, Tashima & Wagstaff, *Federal Civil Procedure Before Trial* (2014) at § 11:1682 ("[c]ontention interrogatories asking for each and every fact . . . that supports particular allegations in a pleading may be held overly broad and unduly burdensome").

At the same time, the defendants are entitled to know the evidence supporting plaintiff's fraud claim. *Kolker v. VNUS Medical Technologies, Inc.,* 2011 WL 5057094 at *6 (N.D.Cal. 2011) (noting that "courts generally approve" interrogatories that seek "the identity of witnesses or documents"). To strike a balance between the burden and the benefit, Rule 26(b)(2)(C) directs the Court to consider if there is a "less burdensome" alternative to obtain the same information. Here there is: Plaintiff could answer Interrogatory 14 by identifying the fraud evidence generally, and then defendants could follow up with detailed questions in plaintiff's deposition, a more efficient format for assessing plaintiff's recollection of (and reliance on) conversations and representations.

---

there are exceptions, but in the typical case, this general rule should result in responding parties foregoing the costs of including every last crumb of evidence in their responses.

*Shoen v Shoen,* 5 F.3d 1289, 1297 (9th Cir., 1993) (stating that "[w]ritten interrogatories are rarely, if ever, an adequate substitute for a deposition when the goal is discovery of a witness' recollection of conversations").

Moreover, by asking plaintiff's counsel to explain precisely which witnesses and documents he will use to prove each element of the fraud claim, Interrogatory 14 comes close to revealing trial strategy, which is protected work product under *Hickman v. Taylor*, 329 U.S. 495 (1947) and Rule 26(b)(3)(A).[3] *See In re Ashworth, Inc. Securities Litigation,* 213 F.R.D. 385, 389 (S.D.Cal.2002), (refusing to compel answers to interrogatories that "would necessarily reveal counsel's opinions regarding the relative importance of these witnesses, the highlights of their testimony/factual knowledge, and would link any future statements by the witnesses with plaintiff's counsel's legal theories and conclusions as outlined in the complaint").

But if Interrogatory 14 is read more narrowly to only ask plaintiff to identify the witnesses and documents generally supporting the fraud claim – without asking plaintiff to link each witness and document to each element of the fraud claim – it is proper. While even this request intrudes to a degree on counsel's thought process, that intrusion is specifically authorized by Rule 33(a)(2): "An interrogatory is not objectionable merely

---

[3] Rule 26(b)(3)(A) protects work product contained in "documents and tangible things" while *Hickman* extends to intangible work product.

because it asks for an opinion or contention that relates to fact or the application of law to fact." The drafters explained this further in the Advisory Committee Notes:

> Rules 33 and 36 have been revised in order to permit discovery calling for opinions, contentions, and admissions relating not only to fact but also to the application of law to fact. *Under those rules, a party and his attorney or other representative may be required to disclose, to some extent, mental impressions, opinions, or conclusions.* But documents or parts of documents containing these materials are protected against discovery by this subdivision [26(b)(3) ].

*See Advisory Comm. Notes to 1970 Amendments to Rule 26(b)(3) (emphasis added).* Consistent with this, "courts have generally held that contention interrogatories are proper even where they probe a party's contentions as to how the law applies to the facts, explaining that such probing is perfectly permissible and does not invade the work product privilege merely because the party's counsel must disclose the reasoning applying the law to the facts." *Gilmore v. City of Minneapolis,* 2014 WL 4722488 at *5 (D.Minn. Sept. 22 2014) (quoting *In re Rail Freight Surcharge Antitrust Litig.,* 281 F.R.D. 1, 4 (D.D.C.2011)).

To avoid intruding on protected work product, and to strike the balance directed by the proportionality analysis in Rule 26(b)(2)(C), the Court will compel an answer to Interrogatory 14 that identifies the evidence supporting the fraud claim without answering each subpart of the Interrogatory and without linking that evidence to each element of the fraud claim. The same analysis applies to requests for production 8 and 9. With regard to Interrogatory 18, the plaintiff has already provided the type of answer just approved by the Court for Interrogatory 14, and so the Court will deny the motion to compel any further answer to Interrogatory 18.

**Defense Motion to Compel – Fiduciary Duty Claims**

In requests for production 10 through 14, defendants seek documents concerning plaintiff's claims for breach of fiduciary duty. These discovery requests are similar to those just discussed regarding fraud. For example, request for production 11 is set forth in full below:

> **REQUEST FOR PRODUCTION NO. 11:** Please produce any and all documents that support your allegations in paragraphs 46 through 48 of the Complaint that Gary Lucich or Marcae Lucich breached the fiduciary duty you allege they owed to Plaintiff generally, and specifically:
>
> 1. That in omitting Plaintiff from the list of Troy's heirs, Gary Lucich knowingly, intentionally, and under oath made a material false statement and failed to make a true statement when under an affirmative duty to do so (paragraph 46 a);
>
> 2. That Marcae Lucich "kept the court in the dark" regarding Plaintiff's existence and status as Troy's sole heir (paragraph 47 a. ii);
>
> 3. That Gary Lucich or Marcae Lucich caused the assets of Troy's estate to be distributed to Gary Lucich, Marcae Lucich, Michelle Bennett, Michelle Bennett's children, and Lucich Family Limited Partnership (paragraph 46 d and 47 a. iv);
>
> 4. That the probate of Troy G. Lucich's estate was still open in 2004 when Troy's paternity of Plaintiff was established (paragraph 46 e);
>
> 5. That Gary Lucich refused to disclose to Plaintiff any information regarding the probate of Troy's estate (paragraph 46 f and 47 a. v);
>
> 6. That Gary Lucich or Marcae Lucich participated in a civil conspiracy to perpetuate a probate fraud (paragraph 46 g);
>
> 7. That Gary Lucich or Marcae Lucich did not account to Plaintiff for all dealings in connection with the estate assets and property and the Lucich Family Limited Partnership and that they had a duty to give Plaintiff such an accounting (paragraph 46 i and 47 c);
>
> 8. That Plaintiff has an "acknowledged ownership interest" in Lucich Family Limited Partnership, including all documents showing specifically what persons or documents "acknowledged" said interest, the nature or percentage of said interest, and how said interest was conveyed (paragraph 46 j and 47 d);
>
> 9. That said interest in Lucich Family Limited Partnership, if 10% or 11%, was "far less" than that to which Plaintiff was entitled (paragraph 46 k and 47 e);

10. That Gary Lucich or Marcae Lucich lied to Plaintiff in communicating to Plaintiff that Plaintiff was entitled to no more than 11% interest in Lucich Family Limited Partnership (paragraph 46 1 and 47 f);

11. That Gary Lucich or Marcae Lucich managed the Lucich Family Limited Partnership as if Plaintiff was not a limited partner (paragraph 46 m and 47 g);

12. That Gary Lucich or Marcae Lucich made improper distributions and transfers of Lucich Family Limited Partnership assets or that they have made any distributions of Lucich Family Limited Partnership assets whatsoever since its inception on December 30, 1999, to the present (paragraph 46n and 47h);

13. That Gary Lucich or Marcae Lucich failed and refused to make distributions of Lucich Family Limited Partnership assets to Plaintiff and that Gary Lucich had any duty to make such distributions to Plaintiff (paragraph 46o and 47i);

14. That Gary Lucich or Marcae Lucich failed and refused to disclose to Plaintiff or otherwise provide Plaintiff with information and documents bearing on Lucich Family Limited Partnership's transactions activities or assets (paragraph 46 p and 47 j);

15. That Gary Lucich or Marcae Lucich used pressure tactics to get Plaintiff to relinquish any interest Plaintiff may have or may have had in Lucich Family Limited Partnership and failed and refused to provide Plaintiff with information regarding what you allege was "the true extent and the value of that interest" (paragraph 46 q and 47 k);

16. That Gary Lucich threatened Plaintiff that Plaintiff would get nothing from Lucich Family Limited Partnership (paragraph 46 r);

17. That Plaintiff was injured by Gary Lucich or Marcae Lucich's said alleged breach of a fiduciary duty to Plaintiff (paragraph 48).

The analysis applied by the Court to Interrogatory 14 applies here. These Requests for Production are overly burdensome and intrude on protected work product. Once again, the Court will order plaintiff to provide only a partial answer – to answer requests for production 10 through 14, the plaintiff need only identify the documents that relate to the fiduciary duty claim.

**<u>Defense Motion to Compel – Capital Contributions & Improper Distributions</u>**

In Requests for Production 10, 11, 21, and 22, defendants seek documents that show that plaintiff made a capital contribution to the Partnership, and that show any improper Partnership distributions or instances where a defendant failed or refused to make a Partnership distribution to plaintiff.[4] Plaintiff has provided everything (except that which will accompany a privilege log) in answer to Requests for Production 10 and 21, leaving only 11 and 22 at issue. The two Requests ask for the same material, and Request for Production 11 is set forth below in full:

> **<u>REQUEST FOR PRODUCTION NO. 11</u>**: Please produce (or identify by specific document control number) every document showing, or that you rely upon to show, that any Defendant:
> a) made improper distributions and transfers of Limited Partnership assets and benefits;
> b) failed and refused to make distributions of Limited Partnership assets to Plaintiff in accordance with his rightful ownership;
> c) deprived Plaintiff of his fair share of Limited Partnership distributions.

Part of this Request for Production asks plaintiff for evidence of a negative – that is, it asks for evidence that defendants failed to take some action. Such discovery requests are difficult to answer and often held unduly burdensome. *Makaeff v. Trump University, LLC,* 2014 WL 3490356 (S.D.Cal. 2014) (collecting cases rejecting discovery requests that require responding party to prove a negative). The Court agrees and will not compel an answer to subparts (b) and (c) above. Subpart (a) is different, and asks for

---

[4] Requests for production 10 and 11 are set forth in Exhibit D (Dkt. No. 40-5), while requests for production 21 and 22 are set forth in Exhibit B (Dkt. No. 40-3).

documents showing any improper transfers.  The Court will compel an answer to that subpart.

**Plaintiff's Motion To Compel Discovery Re QuickBooks**

The plaintiff seeks to compel defendants to provide accounting records – including QuickBooks records – for the defendant Partnership and an entity known as Northwest Funding.  Northwest Funding is a General Partner of the Partnership, holding a 1% interest.

By letter dated May 16, 2013, plaintiff made a statutory demand under Idaho Code § 53-2-304 for information that includes "full information regarding the . . . financial condition of the . . . limited partnership" and "other information regarding the activities of the limited partnership . . . ."  *See* I.C. § 53-2-304.  With regard to this latter category, the plaintiff requested "records of all payments of any nature to any partners of the Partnership."  *See Exhibit A (Dkt. No. 41-3).*  Northwest is a partner in the Partnership.  Thus, this formal request under the statute clearly included all accounting records for the Partnership and Northwest, including QuickBooks accounting records.

Defendants failed to provide the records.  For four months, plaintiff attempted to obtain the records but received nothing from defendants.  Plaintiff then served discovery requests on defendants, again seeking the accounting records.  For example, plaintiff's Interrogatory 18 asked defendants to identify the transfer of any cash or assets in excess of $1,000 from the Partnership to Northwest Funding.  *See RFP & Interrogatories (Dkt. No. 41-17)* at ¶ 18.  In addition to this Interrogatory, the plaintiff made a Request for Production seeking "each document that relates to or concerns any transfer or distribution

of cash, marketable securities or property from the [Partnership] to . . . Northwest Funding . . . ." *See RFP (Dkt. No. 41-19)* at ¶ 25. These requests clearly cover the QuickBooks records for both the Partnership and Northwest Funding because those records might contain entries allowing plaintiff to trace assets and funds between those two entities. In response to these requests, defendants failed to produce any of the QuickBooks accounting records. *See Responses (Dkt. No. 41-18 & 41-20).*

A full year after the plaintiff had made his statutory request, the defendants continued to object and a mediation session was held with the Court's staff. During that session, an agreement was reached for the defendants to turn over the QuickBooks records. The parties entered into a Discovery Stipulation designed to "provide for the orderly discovery of QuickBooks data and electronically stored information related to the Partnership and identified as such, to provide for the orderly discovery of data (if any exists) stored in the files of Northwest that relates to the Partnership." *See Discovery Stipulation (Dkt. No. 38).* The Court approved the agreement, and incorporated it into a Court Order. *See Order (Dkt. No. 39).*

The Order directed the defendants to grant plaintiff access to "all the Data stored by Northwest in its files ("Northwest Data")" to a third party vendor, who would download and copy that data and send it to Resolve Financial Group. Resolve would separate the data relevant to the Partnership from irrelevant data, and provide a copy of the partnership-relevant files to the defendants only. If the defendants did not file any objection within seven days, Resolve would send the data files to the plaintiff. Plaintiff

agreed to pay for the fees of the Resolve, the third party vendor, and the costs of the mobile storage devices used for the retrieval.

In May of 2014, the third party vendor retrieved three categories of data: (1) Partnership accounting data retrieved from the Lucich's desktop computer; (2) Northwest Quickbooks accounting data retrieved from the Lucich's desktop computer; and (3) Northwest Quickbooks accounting data retrieved from an a cloud-based account. The third party vendor then transferred this data to defendants who raised no objection, and the data was then sent on to Resolve.

Resolve discovered that it could not access the data because it was password protected. Resolve was able to obtain from the defendants a password for the first category of data listed above (the Partnership accounting data retrieved from the desktop computer), but it did not work for the other two categories of data. The Luciches could not recall the old passwords, and Marcae Lucich was "doing her best to remember the old passwords" but having no success. *See E-Mail From Counsel for the Lucich's dated June 13, 2014 (Dkt. No. 45-6).* Eventually, Resolve used a password recovery program to access the second category of data (the Northwest Quickbooks accounting data retrieved from the desktop computer).

Still unable to access the third category of data, Resolve started examining the two categories of data it was able to access. It found that "the Partnership's funds and assets have been extensively and hopelessly commingled with Northwest's account . . . , the Lucich's personal account . . ., and a GEM account . . . . *See Lyons Affidavit (Dkt. No. 45-2)* at ¶ 9.

Defendants argue that plaintiff is engaged in a "fishing expedition", *see Response Brief (Dkt. No. 46)* at p. 4, but this partial evaluation by Resolve shows the discoverability of the Partnership and Northwest accounting data. This case centers on tracing assets, and these accounting records are crucial to that tracing. The QuickBooks accounting records were discoverable even before Resolve's evaluation, and their study simply confirms that conclusion. The Court therefore rejects defendants' argument that plaintiff has not carried his burden of showing this data is discoverable.

With regard to the third category of data – the online cloud-based Quickbooks data for Northwest – plaintiff's counsel stated that "it is not entirely clear to me" why this data is not accessible. *See E-mail From Counsel for Plaintiff dated June 23, 2014 (Dkt. No. 45-6).* The record does not reveal any clear cause for the inaccessibility of the data.

At any rate, plaintiff offered a solution that involved granting Resolve a "full-report user access" to the Quickbooks program that would allow Resolve to access the online data while at the same time would prevent Resolve from making any changes to the data. This "read-only" provision was important because this third category of data includes the accounting records of the Luciches' ongoing gas station and convenience store business, such as payroll and tax information.

The defendants agreed to this but refused to comply with the Order and provide the information unless the plaintiff agreed to the following requirements: (1) plaintiff must identify in advance a list of "particular information [plaintiff] thinks exists related to some identifiable issue or concern;" (2) plaintiff must arrange for Resolve to sort all the documents they have already accessed, and provide it to defendants, before defendants

will provide all the remaining Northwest data located on the cloud; (3) plaintiff must pay defendants the expenses and fees they have incurred in contesting this discovery dispute; (4) plaintiff must agree to, at most, a 30 day extension of the discovery deadlines; and (5) plaintiff must agree to terminate the provision of the Discovery Stipulation that permits Resolve to have access to the QuickBooks data until 30 days following the resolution of the civil action.[5]

None of these five conditions was contained in the Discovery Stipulation incorporated into the Court's Order. That Order required defendants to turn over the QuickBooks material. In explaining why he refused to comply with the Order, defense counsel states that "the circumstances have changed warranting necessary clarification and conditions not previously anticipated." *See Response Brief, supra* at p.7.

But there is no change of circumstances that justifies defendants' unilateral refusal to abide by the terms of the Court's Order. Defendants' repeated claims that plaintiff is engaged in a fishing expedition – and demands that he identify the particular documents he needs before being allowed to examine the accounting records – are specious. As discussed above, the accounting records are clearly discoverable, and there is no requirement under those circumstances that the discovering party identify particular documents before being allowed to examine the accounting records as a whole.

---

[5] Defendants earlier demanded that Resolve sign an indemnity agreement holding them liable for any alterations to the data occurring during downloading. The defendants later dropped that demand.

Defendants continue to argue – even in the briefing on the present motion – that plaintiff has failed to make a formal discovery request for the QuickBooks records. *See Response Brief, supra* at p. 4. As discussed, the argument is unreasonable, and demonstrates that defense counsel is being difficult rather than being a zealous advocate.

The defendants' refusal to abide by the Order and turn over the discovery forced plaintiff to file the motion now under consideration. The Court finds unreasonable the defendants' refusal to comply with the Order.

Accordingly, the Court will grant plaintiff's motion and order the following: (1) Defendants must immediately grant Resolve full-report user status to Northwest Funding's cloud-based QuickBooks data; and (2) The deadlines in this case shall be postponed until the defendants have provided the information. Counsel shall inform the Court when that information has been provided and the Court will hold a status conference to set new deadlines.

Plaintiff also seeks an award of the attorney fees it incurred in filing this motion. Defendants object and seek their own fees.

The discovery of accounting records in a tracing case is a simple process, typically involving quick disclosure, no disputes, and minimal fees. In contrast, defense counsel in this case has unreasonably fought disclosure of records that are clearly discoverable. He is not entitled to be reimbursed for the fees he incurred in that fight.

The Court does recognize that defense counsel was undergoing difficult personal events in his life that may have clouded his judgment to some degree.[6] But that does not excuse his failure to comply with a Court Order and his difficult behavior that goes far beyond zealous advocacy. Because that behavior forced plaintiff to file this motion, the Court will award plaintiff the attorney fees necessary to prepare this motion and associated briefing pursuant to the authority granted in Rule 37(a)(5).

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the plaintiff's motion to compel (docket no. 41) is GRANTED. The Court compels defendants to provide an answer as follows:

1. Regarding bank account records, and specifically with regards to Gary Lucich, Marcae Lucich, and Michelle Lucich Niece, Defendants shall provide all bank account records and any other responsive documents related to Plaintiff's May 16, 2013, Statutory Demand to review partnership records, Requests for Production No.'s 12, 18, 20, 26, and 28, and Interrogatory No. 12.

2. Regarding bank account records, and specifically with regard to the Partnership, defendants shall provide all bank account records and any other

---

[6] During the time of this dispute, defense counsel was dealing with a very serious family emergency.

responsive documents related to Plaintiff's May 16, 2013, Statutory Demand and Requests for Production No.'s 11, 19, and 25.

3. Regarding Columbia documents, and specifically with regards to Gary Lucich, Marcae Lucich, and Michelle Lucich Niece, defendants shall, pursuant to Requests for Production No.'s 4, 5, and 6 and Interrogatory No. 13, provide all documents relating to Columbia, including, but not limited to, K-1's received by Defendants individually from Columbia.

4. Regarding Columbia documents, and specifically with regards to the Partnership, defendants shall provide all documents relating to Columbia pursuant to plaintiff's Request for Production No.'s 3, 4, 5, 11, and 19.

5. The request for attorney fees is DENIED.

IT IS FURTHER ORDERED, that defendant's motion to compel (docket no. 40) is GRANTED IN PART AND DENIED IN PART.  The motion is granted to the extent it seeks to compel the following:

1. **Privilege Log**:  Plaintiff must file a privilege log;

2. **Paternity**:  Plaintiff must file answers to Interrogatories 7 & 8, and Request for Production 3;

3. **Forgery:**  Plaintiff must answer Interrogatory 11 and Request for Production 15.

4. **Fraud**:  Plaintiff must file answers to Interrogatory 14 and Requests for Production 8 & 9 that identify the documents and witnesses that support the claim of fraud.  The motion is denied to the extent it asks for more,

and the plaintiff is not compelled to link the evidence to each element of fraud.

5. **<u>Fiduciary Duty</u>**:  Plaintiff must file answers to Requests for Production 10 through 14 that identify the documents pertaining to the breach of fiduciary duty. The motion is denied to the extent it asks for more.

6. **<u>Capital Contributions & Improper Distributions</u>**:  Plaintiff must file answers to Requests for Production 11(a) & 22(a).

IT IS FURTHER ORDERED, that the plaintiff's motion (docket no. 45) is GRANTED, and the Court orders the following:  (1) Defendants must immediately grant Resolve full-report user status to Northwest Funding's cloud-based Quickbooks data; (2)  The deadlines in this case shall be postponed until the defendants have provide the information; (3) plaintiffs shall file a petition for attorney fees and costs incurred in filing this motion with its supporting briefs and documents, and the Court shall award those fees and costs that are reasonable; and (4) Counsel shall inform the Court when the discovery has been provided and the Court will hold a status conference to set new deadlines.



DATED: January 5, 2015

B. Lynn Winmill
Chief Judge
United States District Court